UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHELLY ANN CUELLAR,

       Plaintiff,

v.                                Case No:  6:14-cv-1799-Orl-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## OPINION AND ORDER

Plaintiff Shelly Ann Cuellar appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").   For the reasons discussed herein, the decision of the Commissioner is affirmed.

### I.    Issues on Appeal

Plaintiff raises three issues on appeal:  (1) whether substantial evidence supports the finding of the Administrative Law Judge ("ALJ") concerning Plaintiff's residual functional capacity ("RFC"); (2) whether substantial evidence supports the ALJ's credibility determination; and (3) whether the ALJ properly evaluated Plaintiff's mental impairments.

### II.    Procedural History and Summary of the ALJ's Decision

On October 18, 2012, Plaintiff filed applications for a period of DIB and SSI alleging that she became disabled and unable to work on October 8, 2012.   Tr. 205-13, 214-21.   The Social Security Administration denied her claim initially on March

8, 2013 and upon reconsideration on May 23, 2013.   Tr. 72-79, 91-102.   Plaintiff requested and received a hearing before ALJ Janet Mahon on March 11, 2014, during which she was represented by a non-attorney representative.   Tr. 42-61.   Plaintiff and vocational expert ("VE") Linda Ebersole testified at the hearing.

On May 16, 2014, the ALJ issued a decision finding that Plaintiff was not disabled and denied her claim.   Tr. 13-31.   The ALJ first determined that Plaintiff met the insured status required of the Social Security Act through September 30, 2017.   Tr. 15.   At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 8, 2012, the alleged onset date ("AOD"). *Id.*   At step two, the ALJ determined that Plaintiff has the following severe impairments: valvular heart disease, bipolar and borderline personality disorder, syncope and alcohol dependence.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 16.

In doing so, the ALJ specifically considered the four broad functional areas set out in the regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, the so-called "paragraph B" criteria.[1]   Tr. 16.   In the first functional area of daily living, the ALJ determined that Plaintiff has a mild restriction.   *Id.*   The ALJ noted that Plaintiff needs reminders to brush her teeth, perform her hygiene and take her medications.   *Id.*   The ALJ also noted that

---

[1] 20 C.F.R., Pt. 404, Subpt. P. App. 1.

Plaintiff does not cook because she cannot stand up, as she will pass out because her blood pressure gets too low. *Id.* The ALJ reported that Plaintiff does no household chores because she will start to feel dizzy and faint, but she is able to take care of two children ages 5 and 7. *Id.* Therefore, the ALJ concluded that Plaintiff has a mild limitation in daily functioning. *Id.*

In the next functional area, social functioning, the ALJ found that Plaintiff has moderate difficulties. *Id.* The ALJ noted that Plaintiff lives in an apartment with her husband and children but she does not go out alone. *Id.* Plaintiff shops online, and alleges she has no social activities and does not go anywhere on a regular basis. *Id.* Plaintiff is afraid to go out in public and previously has been fired from jobs because of her bipolar disorder, as she sometimes goes into manic episodes. *Id.* Thus, the ALJ found that Plaintiff has a moderate limitation in social functioning. *Id.*

In the third functional area of concentration, persistence, or pace, the ALJ found that Plaintiff has moderate limitations. *Id.* The ALJ stated the Plaintiff reported that she has problems with memory, completing tasks, concentration and understanding. *Id.* While Plaintiff can follow written instructions most of the time and spoken instructions, she has trouble concentrating and cannot handle stress well or changes in routine. Tr. 16-17. Additionally, the ALJ reported that Plaintiff does not drive because she had a seizure in October 2012, and she had to wait six months to drive again. Tr. 17. Although Plaintiff can pay bills and count change, she does not have a savings account and does not know how to use a checkbook. *Id.* The ALJ

noted that Plaintiff has been diagnosed with bipolar disorder and borderline personality disorder. *Id.* Plaintiff also has been admitted on multiple occasions for suicidal ideations, altered mental status and alcohol intoxication. *Id.*

In the fourth functional area of episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation of an extended duration. *Id.* Accordingly, the ALJ concluded: "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." Tr. 17.

Taking into account the effects of all of Plaintiff's impairments, the ALJ determined that Plaintiff has the RFC to perform less than a full range of light work. Tr. 18. The ALJ found,

> [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk 6 hours in an 8-hour workday; should avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights; should avoid concentrated exposure to vibration; she retains the ability to perform simple tasks and only occasionally have interaction with the public and supervisors.

*Id.* The ALJ found that Plaintiff's impairments are not as severe or limiting as alleged and would not have precluded her from performing work at the assessed RFC "on a regular and continuing basis." Tr. 29. The ALJ found that Plaintiff was unable to perform any of her past relevant work ("PRW") as a phlebotomist, nurse, lab clerk, and room service clerk, but there are jobs existing in significant numbers in the national economy that Plaintiff can perform. Tr. 29-30. Thus, the ALJ found Plaintiff was not disabled and denied her claim. Tr. 31.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Counsel which was denied on September 16, 2014.   Tr. 1-6. Accordingly, the ALJ's May 16, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on November 4, 2014.   Doc. 1.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

"The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than

create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote*, 67 F.3d at 1560 (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).

Accordingly, where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### IV.   Discussion

#### a.   *Whether substantial evidence supports the ALJ's RFC finding*

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to consider several limitations that are well established in the record.   Doc. 20 at 3.   Specifically, Plaintiff states that the ALJ failed to include a limitation on standing and walking, when the positive tilt table testing shows that she cannot be on her feet for 6 hours in an 8-hour day work day. *Id.* at 4.   Plaintiff further alleges that the ALJ omitted the documented evidence of syncopal episodes.   *Id.*   Finally, Plaintiff states that the ALJ failed to incorporate

her mental health limitations in the RFC to their full extent.   *Id.* at 6.   Conversely, the Commissioner argues that the ALJ properly considered all of the relevant evidence including both objective medical evidence and Plaintiff's subjective complaints in determining Plaintiff's RFC.   Doc. 21 at 5.

When an impairment does not meet or equal a listed impairment at step three, as in this case, the ALJ will proceed to step four to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.   20 C.F.R. § 404.1520(e).   Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."   Tr. 16.   The ALJ then proceeded to assess and make a finding regarding the claimant's RFC.   The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a)(1).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence and medical source statements.   *Id.*   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The determination of RFC is within the authority of the ALJ; and the claimant's age, education and work experience are considered in determining the claimant's RFC and the claimant's ability to return to past relevant work.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).   The RFC assessment is based upon all the relevant evidence of a claimant's remaining

ability to do work despite impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Plaintiff alleges that her tilt table test results clearly show that she cannot be on her feet for 6 hours out of an 8-hour day, and had the ALJ properly considered this evidence, she would have found that there was no work Plaintiff was capable of performing.   Doc. 20 at 2.   Plaintiff states that this is evidenced by the hypothetical questions the ALJ posed to the VE.   *Id.*

In her decision, the ALJ found that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b), with specific limitations.   Tr. 18. In doing so, she noted that she considered all of Plaintiff's symptoms, and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."   Tr. 18.   Contrary to Plaintiff's assertions, the ALJ properly considered Plaintiff's tilt table results, syncopal episodes, and mental health limitations.   Tr. 18-29.

On May 28, 2012, Plaintiff went to the emergency room at Florida Hospital. Tr. 367.   Plaintiff was admitted to the hospital, and neurology and cardiology were consulted.   *Id.*   Plaintiff was found to have syncope and an abnormal tilt-table test, but her stress test was normal, and her neurological workup was negative.   *Id.* Plaintiff was instructed to follow up with an electrophysiologist. Tr. 368.

Plaintiff later was treated by Dr. Chakravarthy Raghavan, M.D. for syncopal episodes.   Tr. 441-42.   Dr. Raghavan performed a physical evaluation and reviewed

some of Plaintiff's medical records, including her tilt-table test.   *Id.*   Dr. Raghavan recommended that Plaintiff undergo a repeat tilt-table test.   Tr. 442.

Here, the ALJ discussed Plaintiff's syncope diagnosis and the abnormal tilt-table test.   Tr. 20.   The ALJ discussed the records from Florida Hospital and Dr. Raghavan's examination regarding Plaintiff's syncopal episodes and the results of the tilt-table test.   Tr. 19-21.   The ALJ accounted for these episodes by adding limitations to Plaintiff's RFC.   Tr. 18. The ALJ recommended that Plaintiff avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights.   *Id.*   She also should avoid concentrated exposure to vibration. *Id.*

Additionally, the ALJ noted that Dr. Efran Baltazar, a state agency medical consultant, opined that Plaintiff could sit and stand for 6 hours in an 8-hour workday. Tr. 29, 111-12.   The ALJ, however, concluded that Plaintiff had a more restrictive RFC than that suggested by Dr. Baltazar.   Tr. 18.   The ALJ found that Plaintiff had the RFC to perform less than a full range of light work.   *Id.*   Dr. Baltazar, on the other hand, opined that Plaintiff could perform medium work.   *Id.*   As the Commissioner notes, Plaintiff has not cited to any evidence suggesting that she is not capable of performing light work.   Doc. 21 at 8.   It is apparent from the record that the ALJ properly considered Plaintiff's syncopal episodes and tilt-table test.

Plaintiff also alleges that the ALJ failed to consider the full extent of Plaintiff's mental health limitations.   Doc. 20 at 6.   Plaintiff, however, fails to specify which conditions the ALJ failed to consider.   *Id.*   Plaintiff simply states that the record is

replete with psychiatric admissions and episodes of mental instability. *Id.* Additionally, Plaintiff states that the ALJ failed to consider the requirements set forth in SSR 85-16. *Id.* at 5-6. The Commissioner responds that Plaintiff's argument is vague, and the ALJ considered Plaintiff's testimony about her mental limitations and discussed Plaintiff's medical evidence related to Plaintiff's bipolar disorder and borderline personality disorder. Doc. 21 at 10-11.

SSR 85-16 states that consideration of the following is necessary for the determination of mental RFC:

- History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.

- Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.

- Reports from workshops, group homes, or similar assistive entities.

SSR 85-16. The regulation also provides that when analyzing the evidence and drawing meaningful inferences and conclusions, consideration should be given to:

- Quality of daily activities, both in occupational and social spheres (see Listing 12.00, Introduction), as well as of the individual's actions with respect to a medical examination.

- Ability to sustain activities, interests, and relate to others *over a period of time*. The frequency, appropriateness, and independence of the activities must also be considered (see PPS No. 96, SSR 83-15, Titles II and XVI: Evaluation of Chronic Mental Impairments).

- Level of intellectual functioning.

- Ability to function in a work-like situation.

SSR 85-16.

Here, the Court finds that that ALJ complied with the requirements of SSR 85-16 when determining Plaintiff's RFC. The ALJ discussed Plaintiff's medical history and diagnoses. Tr. 13-31. She discussed Plaintiff's reports of activities of daily living and the quality of her daily activities both in occupational and social spheres. *Id.* The ALJ considered Plaintiff's ability to function in work-like situations and reports from third parties regarding Plaintiff's performance and behavior. *Id.*

Specifically, Plaintiff cites to various medical records to indicate that "the record is replete with psychiatric admissions and episodes of mental instability." Doc. 20 at 6. The ALJ, however, considered all of the records cited to by Plaintiff, in addition to others Plaintiff failed to reference. [2] Tr. 13-31. Plaintiff first cites to records from Florida Hospital. Doc. 20 at 6. The ALJ properly considered the records from Florida Hospital. Tr. 19. The ALJ discussed Plaintiff's admission to the emergency room at Florida Hospital for suicidal thoughts and depression because she had been stressed about money and bills. Tr. 19, 386. The ALJ noted that on physical examination, Plaintiff was anxious and tearful. *Id.* Plaintiff's clinical impression was suicidal ideation. *Id.*

---

[2] Plaintiff refers, in her citation, to records from Florida Hospital, Orlando Psychiatric Associates and Dr. Bhaskar N. Raju, Dr. P. Phillips Hospital and Central Florida Behavioral Hospital to show that "[t]he record is replete with psychiatric admissions and episodes of mental instability." Doc. 20 at 6.

Contrary to Plaintiff's contention, the ALJ also considered the records from Orlando Psychiatric Associates and Dr. Bhaskar N. Raju, a Child Adolescent Adult Psychiatrist.   Tr. 19, 21, 23-26, 28.   The ALJ discussed Plaintiff's March 5, 2012 visit indicating that she was doing well on her medication regime and had no complaints at that particular time.   Tr. 19, 438.   The ALJ discussed Plaintiff's next visit on April 2, 2012 indicating that Plaintiff was overwhelmed because of her children and work.   Tr. 19, 437.   The records also revealed that Plaintiff's sleep improved with medication and there were no side effects reported or in evidence.   Tr. 437.   Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, panic disorder without agoraphobia.   Tr. 19, 437.   The ALJ also considered the later visits to Orlando Psychiatric Associates and Dr. Raju.   Tr. 21, 23-26, 28.   On January 9, 2013, Plaintiff reported feeling down, anxious, and panic attacks.   Tr. 21, 435.   The records revealed and the ALJ noted that Plaintiff had not been taking her medication for ten months.   *Id.*   Plaintiff was restarted on medication and therapy. *Id.*   Later on May 7, 2013, Plaintiff reported feeling more depressed, paranoid, crying spells, and being afraid to go home.   Tr. 23, 615.   A few days later, Plaintiff indicated that she had anger issues and mood problems.   Tr. 23, 613.   She also reported to Dr. Raju that her personality switches, and she becomes someone else.   *Id.*   She has considered admitting herself to Central Florida Behavioral Hospital.   *Id.*   Dr. Raju advised Plaintiff to admit herself to Central Florida Behavioral Hospital for an evaluation.   *Id.*   Dr. Raju diagnosed Plaintiff with panic disorder without agoraphobia, major depressive disorder, recurrent, severe with psychotic features,

and major depressive disorder, recurrent, moderate.   Tr. 23, 614.   By May 30, 2013, Plaintiff reported that she was doing better on her current regimen.   Tr. 23, 611. The ALJ noted that Plaintiff's depressive symptoms had improved, and she no longer was hearing voices.   *Id.*   Plaintiff's anxiety was under control, and she was sleeping better.   *Id.*   Dr. Raju indicated that Plaintiff was stable.   Tr. 23, 612.   The ALJ also considered the subsequent reports from Plaintiff that she was depressed and suicidal and she was having manic behaviors.   Tr. 24-25, 609, 637.   A progress note from October 23, 2013, however, revealed that Plaintiff had less anxiety with Vistaril, and Plaintiff's mental status examination was within normal limits.   Tr. 26, 803-04. The ALJ properly discussed and considered this evidence.   Tr. 26.

The ALJ also addressed the records from Dr. P. Phillips Hospital.   Tr. 22, 25-26, 469-503.   The ALJ discussed Plaintiff's attempted suicide when Plaintiff overdosed on Ambien and Xanax.   Tr. 26.   The ALJ discussed Plaintiff's reports of suicidal ideation, and that Plaintiff was Baker Acted and transferred to Central Florida Behavioral Health where she was diagnosed as bipolar disorder 1 and depressed without psychosis.   Tr. 26.

The RFC also included discussion of Plaintiff's records from Central Florida Behavioral Health.   Tr. 23-27.   On May 13, 2013, Plaintiff was admitted to Central Florida Behavioral Health for depression.   Tr. 23, 509.   Plaintiff indicated that she had stopped taking her medication because it was causing her to gain weight.   *Id.* The doctor agreed to change her medication and kept her in the hospital in order to make the adjustments.   *Id.*   Plaintiff stabilized and was discharged on May 28,

2013.   Tr. 23, 511.   She was prescribed Zyprexa, Cymbalta, Ativan and Ambien. *Id.*   Plaintiff had no adverse effects to the medication and showed steady improvement.   *Id.*

Plaintiff again was treated at Central Florida Behavioral Hospital on June 1, 2013 for complaints of visual and auditory hallucinations of someone telling her to do bad things.   Tr. 23, 525.   Plaintiff reported that she was not taking her medication, and she felt that was the reason she was hallucinating.   *Id.*   Although Plaintiff had no intention of doing what the voices told her, she felt that it was getting uncomfortable and difficult to control.   Tr. 525.   The ALJ noted that Plaintiff reported that she experienced constant anxiety, and she was scared about various things.   Tr. 24, 525.   Plaintiff's records also revealed a history of panic attacks but the attacks were not frequent enough to be considered a disorder.   *Id.*   Plaintiff was discharged from Central Florida Behavioral Hospital two days later.   *Id.*

Two days following her discharge, Plaintiff requested to be admitted to the hospital again for fleeting suicidal thoughts.   Tr. 24, 544.   Plaintiff indicated that she did not have any intention of actually hurting herself, but she wanted to come to the hospital.   Tr. 544.   During Plaintiff's June 5, 2013 visit, Plaintiff stated that she enjoyed being in the hospital because of the groups and the attention and activities in the unit.   *Id.*   Plaintiff was advised that counseling and groups were available on an outpatient basis.   *Id.*   By June 7, 2013, Plaintiff's condition had improved, she was stable on her medications, and she was discharged.   Tr. 24, 546.

The ALJ discussed in detail Plaintiff's subsequent visits and her attempts at suicide gestures so that she could be admitted to the hospital.   Tr. 24, 560.   Plaintiff admitted that she enjoyed being in the hospital, and she knew that the dosage of Ativan she took would not kill her, but it would be sufficient to bring her back in to the hospital.   *Id.*   After a few days in the hospital, Plaintiff requested to be released to outpatient care.   Tr. 24, 562.   The ALJ noted that Plaintiff had been admitted four times over the course of two months.   Tr. 25, 575.   Plaintiff's dosage of medication was increased, and Plaintiff was instructed on how to take the medication. Tr. 575.   Once Plaintiff took the increased dosage, she quickly became more stable. *Id.*   The ALJ also discussed Plaintiff's subsequent admission for a manic episode, along with Plaintiff's report that she again had stopped taking her medication.   Tr. 26, 646.   Plaintiff's medication was resumed, and her condition improved.   *Id.*

The ALJ continued to discuss Plaintiff's records from Central Florida Behavioral Hospital.   Tr. 27.   A record from November 10, 2013 discussed Plaintiff's long psychiatric history and her noncompliance with medication.   Tr. 27, 677. Plaintiff was advised of the importance of complying with her medication.   *Id.*   Upon discharge, Plaintiff was alert and oriented, and she denied any suicidal or homicidal ideation.   *Id.*

In addition to the records Plaintiff stated were "replete with psychiatric admissions and episodes of mental instability," the ALJ considered the additional evidence in the record.   The ALJ referenced opinions from Dr. Qureshi indicating that Plaintiff's mental impairment was permanent, and she had social/behavioral

limitations due to schizophrenia and isolation from friends and family.   Tr. 25, 617-18.   The ALJ noted, however, that Plaintiff's mental impairments improved when she was compliant with medication.   Tr. 29.

The ALJ also considered the third party questionnaire completed by Plaintiff's husband.   Tr. 27.   Plaintiff's husband stated that she is able to take care of her children but there are times when she does not bathe or do her hair for days.   Tr. 27, 299.   She is unable to do household chores, go out alone or drive.   Tr. 27, 298-305. Plaintiff's husband reported that Plaintiff has difficulty getting along with others, problems with memory, completing tasks, concentration and understanding, and difficulty following written or spoken instruction.

The ALJ specifically stated that she considered Plaintiff's subjective complaints, medical records, Plaintiff's testimony, activities of daily living and statements and reports.   Tr. 28.   Based on the records, the ALJ concluded that Plaintiff was doing well on medication and her depressive symptoms had improved. Tr. 28.   The ALJ acknowledged that the record revealed multiple admissions due to suicidal ideations, overdose, altered mental status, and alcohol intoxication, but the records also showed that Plaintiff had been noncompliant with treatment.   *Id.*   The ALJ found that the medications had been relatively effective in controlling Plaintiff's symptoms, and when Plaintiff was compliant with the medication, her symptoms improved.   *Id.*   Additionally, the ALJ found that while Plaintiff reported various side effects from the medications, the side effects generally were mild, and would not interfere in any significant manner with Plaintiff's ability to perform work activities.

*Id.*  Taking all of the evidence related to Plaintiff's mental impairments into consideration, the ALJ also included in the RFC that Plaintiff should have only occasional interaction with the public and supervisors.   Tr. 18.

The ALJ also found that although Plaintiff's daily activities were limited as described, the ALJ had no way to objectively verify those activities with any degree of certainty.   *Id.*   Additionally, the ALJ found it difficult to attribute Plaintiff's alleged degree of limitation to the claimant's medical condition, as opposed to other reasons.   *Id.*   The ALJ stated, "[i]n summary, after careful consideration of the entire record, the undersigned is persuaded that [Plaintiff's] impairments are not as severe or limiting as alleged and would not have precluded her from performing work at the residual functional capacity assessed above or on a regular and continuing basis."   Tr. 29.

The Court finds that the ALJ properly considered the requirements of SSR 85-16.   The ALJ adequately considered Plaintiff's medical history, findings and observations, the reports of Plaintiff's daily living along with testimony from third parties and Plaintiff's ability to function in a work-like situation.   Thus, the Court finds that the ALJ's RFC is supported by substantial evidence.

> b.  *Whether substantial evidence supports the ALJ's credibility determination*

Plaintiff next alleges that ALJ failed to make a proper credibility determination as to Plaintiff's testimony.   Doc. 20 at 6.   Plaintiff argues that there were no inconsistencies in her testimony, and the medical evidence supports her allegations of severe limitations.   *Id.* at 8.   The Commissioner argues that the ALJ

applied the correct legal standards and sufficiently articulated explicit and adequate reasons for discrediting Plaintiff's allegations.   Doc. 21 at 13.   The Commissioner states,

> Plaintiff's subjective complaints were not fully credible considering (i) Plaintiff's own description of her activities and lifestyle, (ii) the degree of medical treatment required, (iii) discrepancies between her assertions and information contained in the documentary reports, (iv) Plaintiff's demeanor at the hearing, (v) the reports of the treating and examining medical sources, (iv) her medical history, and (vii) the findings on examination.

*Id.*

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Wilson*, 284 F.3d at 1225-26.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

In this case, the ALJ considered Plaintiff's claims with regard to both her alleged physical and mental impairments.  Tr. 27-29.  In terms of Plaintiff's pain and physical impairments, the ALJ found that objective evidence and Plaintiff's treatment history did not support her allegations, which is proper for the ALJ to do.  Tr. 27-29.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (allowing an ALJ to consider objective medical evidence when assessing credibility); 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(vi) (allowing an ALJ to consider treatment a claimant uses for symptom relief).  The ALJ reviewed the treatment records and found that the type of medical treatment Plaintiff generally received was not what one would expect for a totally disabled individual.  Tr. 27.

In terms of the symptoms caused by her mental impairments, the ALJ considered Plaintiff's daily activities, medical treatment, social interaction, treatment results, and medication side effects to determine that Plaintiff was not entirely credible.  Tr. 22.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), (iv)-(v), (vii), 416.929(c)(3)(i), (iv)-(v), (vii) (allowing an ALJ to consider all of these factors in assessing the credibility of alleged symptoms).  The ALJ appropriately considered Plaintiff's daily activities.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Hennes v. Comm'r of Soc. Sec.*, 130 F. App'x 343, 348-49 (11th Cir. 2005) (holding that "the degree of [plaintiff's] complaints also were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet").  The ALJ acknowledged that Plaintiff's daily activities were fairly limited, but stated that the limited daily

activities could not be objectively verified with any reasonable degree of certainty; and if Plaintiff truly was a limited as alleged, it was difficult to attribute that degree of limitation to Plaintiff's medical condition.   Tr. 28.   The ALJ also stated Plaintiff apparently is able to care for her children with the assistance of her husband and mother, which can be both physically and emotionally demanding.   *Id.* Additionally, the ALJ noted that when Plaintiff was compliant with her medication, her symptoms improved.   Tr. 29.   Thus, the ALJ did not err in finding that Plaintiff's statements about her symptoms were not entirely credible.

Credibility determinations, resolving conflicts in the evidence and drawing inferences therefrom are functions of the Commissioner, not the Court.   *Parker v. Colvin*, No. 8:12-cv-1919-T-24-TGW, 2013 WL 3209443, at *2 (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) and *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963)).   Instead, the Court's role is limited to determining whether the ALJ's decision is supported by substantial evidence.   To that end, "[t]the question is not . . . whether [the] ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r of Soc. Sec.*, 421 Fed. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ determined that Plaintiff's subjective complaints are not entirely credible, and Plaintiff is not as limited as alleged.   As set forth above, the ALJ sufficiently explained her reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence.   Nor will it disturb a clearly articulated credibility finding that is supported by substantial evidence.   *Hale v.*

*Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Foote*, 67 F.3d at 1562 (same); *Lawson v. Astrue*, No. 8:07-cv-243-T-TGW, 2008 WL 681097, at *2 (M.D. Fla. Mar. 7, 2008) ("It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.") (citing *Grant*, 445 F.2d 656).   The ALJ discussed in detail the specific portions of the record and Plaintiff's testimony that she found were inconsistent or exaggerated, and upon review the Court finds that substantial evidence supports the ALJ's credibility determination.

### c.   *Whether the ALJ properly evaluated Plaintiff's mental impairments*

Plaintiff argues that the ALJ erroneously evaluated Plaintiff's mental impairments because her functional limitations are more severe than set forth in the decision.   Doc. 20 at 10.   Plaintiff alleges that the ALJ erroneously discounted the findings of medical professionals and substituted her own opinions for the diagnosis. *Id.* at 12.   Plaintiff also alleges that she has multiple global assessments of functioning ("GAF") scores of 45, which is indicative of the severity of her mental condition.   *Id.* at 10-11.   Additionally, Plaintiff has been admitted to the hospital for suicidal ideations on multiple occasions.   *Id.* at 11.   Plaintiff also argues that the ALJ erred when she determined that Plaintiff's major depressive disorder and panic disorder were not severe.   *Id.*

The Commissioner responds that the ALJ properly used the ratings to find at steps two and three that Plaintiff's bipolar disorder and borderline personality disorder were severe but did not satisfy the criteria for a listing.   Doc. 21 at 17-18.

Thus, the ALJ proceeded with sequential analysis.   *Id.* at 18.   The Commissioner asserts that the ALJ did not substitute her own opinions for the opinions of the medical experts.   *Id.*   The ALJ found Plaintiff more limited than the medical experts.   *Id.*   The Commissioner contends that the ALJ did not err by finding Plaintiff's major depressive disorder and panic disorder non-severe, because she found that Plaintiff had severe impairments at step two, and therefore proceeded with the sequential evaluation process.   Doc. 21 at 20.

Plaintiff argues that the ALJ erred when she accorded significant weight to the opinion of Dr. Qureshi, but she rejected the portion of his opinion stating that Plaintiff was unable to engage in substantial gainful activity.   Doc. 20 at 12.   "An opinion on an applicant's RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources, and the physician's opinion in this respect is not entitled to deference."   *Shaw v. Astrue*, 392 F. App'x. 684, 681 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e).   While the ALJ must consider a medical source statement along with the other record evidence, the determination regarding a Plaintiff's RFC is reserved for the Commissioner.   20 C.F.R. § 404.1527(d).   As previously discussed, Dr. Qureshi opined that Plaintiff's mental impairment was permanent, and Plaintiff has social/behavioral limitations due to schizophrenia and isolation from her friends and family.   Tr. 25.   While the ALJ discussed and considered the opinion of Dr. Qureshi and gave the opinion significant weight, she made her findings based on all of the evidence of record, which revealed that Plaintiff's symptoms improved when she was compliant with her

medication.  Tr. 29.  Thus, the Court finds no error in the ALJ's decision nor does the Court find that the ALJ substituted her opinion for that of the medical professionals when her opinions are based on the record as whole.

Plaintiff also argues that her functional limitations are more severe than the ALJ provides in his opinion.  Doc. 20 at 10.  The ALJ properly went through all of the "paragraph B" criteria and found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in social functioning and concentration persistence or pace and no episodes of decompensation.  Tr. 16-17.  When making this finding the ALJ considered the opinions of state agency psychologists, Dr. Michael Stevens and Dr. B. Lee Hudson.  Tr. 17.  The ALJ gave only some weight to these opinions because she found Plaintiff to be more limited than that suggested by Dr. Stevens and Dr. Hudson, based on the totality of the records and Plaintiff's statements.  *Id.*

The ALJ also properly considered Plaintiff's GAF scores. A GAF score is merely a global reference intended to aid in treatment, but it does not necessarily reveal a particular type of limitation, and it is not an assessment of Plaintiff's ability to work. *Ward v. Astrue*, 2008 WL 1994978 *3 (M.D. Fla. 2008) (stating "an opinion concerning GAF even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.") (citing *Jiles v. Barnhart*, 2006 WL 4402937 *2 n. 1 (N.D. Ala. 2006)).  Contrary to Plaintiff's assertions, the ALJ included these finding in her overall decision. The ALJ discussed Plaintiff's improvement when she is on her medication and also the improvement in Plaintiff's

GAF scores, from 50 on admissions to the hospital to 70 on discharge.   Tr. 29.   Thus, the Court finds no error.

Finally, the Court finds that the ALJ committed no error at step two in finding Plaintiff's manic depressive disorder and panic disorder non-severe.   At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   Plaintiff bears the burden of establishing that his impairments are severe.   *Bowen*, 482 U.S. at 146 n.5.   A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).   "A non-severe impairment is a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."   *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).   "The ALJ must consider every impairment alleged."   *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).   When determining a claimant's RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. § 404.1545(a)(2); SSR 96-8p.   The ALJ is required to consider the combined effects of a claimant's alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Although the ALJ found that Plaintiff's manic depressive disorder and panic disorder were non-severe, the ALJ did find that Plaintiff suffered from severe

impairments and continued through the sequential evaluation to step five.   The Eleventh Circuit has noted that the finding of *any* severe impairment is enough to satisfy step two, "because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe."   *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. Mar. 30, 2011).   Thus, even assuming the ALJ erred when she concluded that Plaintiff's manic depressive disorder and panic disorder were not severe impairments, that error was harmless, because the ALJ considered all of her impairments, including those she deemed non-severe, when determining Plaintiff's RFC.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff is not disabled is supported by substantial evidence.   Where, as here, the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the preponderance of the evidence is against the Commissioner's decision.   *Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 9th day of March, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record